[Cite as *Chambers v. Farmers Ins. of Columbus, Inc.*, 2026-Ohio-2541.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

RYAN CHAMBERS,                               :

    Plaintiff-Appellant,        :

                              No. 115624

v.                                           :

FARMERS INSURANCE OF                         :
COLUMBUS, INC.,

    Defendants-Appellees.       :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 2, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-22-958771

---

### *Appearances:*

Shamis & Gentile and Andrew J. Shamis; Jacobson Phillips PLLC, Jacob L. Phillips, and Joshua R. Jacobson; Normand PLLC and Edmund A. Normand, pro hac vice; Edelsberg Law, P.A., and Adam A. Schwartzbaum, pro hac vice, *for appellant*.

Frantz Ward LLP and Gregory R. Farkas; Dentons US LLP and Mark L. Hanover, pro hac vice, *for appellee* Farmer's Insurance of Columbus, Inc.

LISA B. FORBES, P.J.:

{¶ 1}  Ryan Chambers ("Chambers") appeals the grant of summary judgment in favor of Farmers Insurance of Columbus, Inc. ("Farmers" or the "Company"). After a thorough review of the facts and the law, we affirm.

## I.  Procedural History

{¶ 2}  On January 26, 2022, in the Cuyahoga County Common Pleas Court, Chambers filed a class-action complaint against Farmers, claiming breach of contract. Chambers alleged that he owned a vehicle that was insured under a policy that the Company had issued ("Policy") and that the vehicle was involved in an accident, prompting him to file a property-loss claim with the Company. The Company deemed the vehicle a total loss and paid Chambers a cash settlement. The settlement did not include payment for sales tax, which according to Chambers, the Policy required.

{¶ 3}  This case was previously appealed in *Chambers v. Farmers Ins. of Columbus, Inc.*, 2025-Ohio-5 (8th Dist.), which affirmed class certification while modifying slightly the class definition. Upon remand, Farmers moved to dismiss Chambers's complaint, asserting that, under Civ.R. 12(B)(6), Chambers had stated no claim upon which relief could be granted. The Company argued that Chambers was not entitled to a sales-tax payment under the Policy, which provides, "[i]f we pay for loss in money, our payment will include, where required by law, the applicable sales tax and fees for the damaged or stolen property." According to the

Company, Chambers was not entitled to a sales-tax payment under Ohio law, specifically, Adm.Code 3901-1-54(H)(7)(f) ("O.A.C. Provision"), which provides:

> If within thirty days of receipt by the claimant of a cash settlement for the total loss of an automobile, *the claimant purchases a replacement automobile, the insurer shall reimburse the claimant for the applicable sales tax* incurred on account of the claimant's purchase of the automobile . . . . If the claimant purchases an automobile with a market value less than the amount of the cash settlement, the insurer shall reimburse only the actual amount of the applicable sales tax on the purchased automobile. *If the claimant cannot substantiate such purchase and the payment of such sales tax* by submission to the insurer of appropriate documentation within thirty-three days after receipt of the cash settlement, *the insurer shall not be required to reimburse the claimant for such sales taxes*.

(Emphasis added.)

{¶ 4} On May 9, 2022, the court denied the motion to dismiss, stating that the contract language was "arguably ambiguous." The court stated, "A reasonable interpretation [of the contract] would be that" in the state of Ohio, which "always requires sales tax, Farmers must always include sales [tax] when it pays for a loss in money to replace a damaged or stolen vehicle." The court concluded, "[I]t does not appear that plaintiff can prove no set of facts in support of his claim."

{¶ 5} Farmers filed a motion for summary judgment on June 9, 2025, arguing again that the Policy required total-loss cash settlements to include sales-tax payments only where required by law. Again, the Company posited that controlling Ohio law, the O.A.C. Provision, requires payment of sales tax only to insureds that, unlike Chambers, substantiated purchase of a replacement vehicle.

{¶ 6} Chambers opposed Farmers' summary-judgment motion. He did not argue that he satisfied the O.A.C. Provision's criteria for sales-tax payment. That is, Chambers did not argue that he substantiated purchase of a replacement vehicle, much less that he did so within 30 days of receipt of payment of his claim. Rather, he argued that the Policy required total-loss cash settlements to include sales-tax payments, regardless of whether the insured had substantiated purchase of a replacement vehicle. According to Chambers, the Policy language "where required by law" required such payments in states that, like Ohio, impose a sales tax on purchases of a vehicle. Chambers also argued that, in Ohio, ambiguous insurance contracts are given the effect favorable to the insured. He contended that, in denying the motion to dismiss, the court had found the Policy ambiguous and was required to do so again in its ruling on the summary-judgment motion.

{¶ 7} To show that the Policy required total-loss cash settlements to include sales-tax payments, Chambers attempted to distinguish the language in the Policy from that in the O.A.C. Provision. According to Chambers, the O.A.C. Provision concerned the sales tax imposed upon purchase of a vehicle that replaced a damaged vehicle. The Policy, unlike the O.A.C. Provision, related to the sales tax paid or levied at the time of the initial purchase of a vehicle that later became damaged. Failure to substantiate purchase of a replacement vehicle, discussed in the O.A.C. Provision, was, therefore, immaterial to the Company's obligation under the Policy to pay insureds for sales tax.

**{¶ 8}** On August 29, 2025, the court granted Farmers' motion for summary judgment, finding:

> Because Ohio law only requires insurers to pay sales tax on a damaged/stolen vehicle when, and only when, the two conditions precedent in Ohio Adm. Code 3901-1-54(H)(7)(F) have been satisfied, plaintiff's claim for breach of contract fails, and summary judgment in favor of defendant Farmers is appropriate.

**{¶ 9}** The court also found that its prior discussion of arguable ambiguity, in its ruling on the motion to dismiss, did not preclude granting summary judgment. The court noted that it evaluates motions to dismiss and motions for summary judgment using different standards.

**{¶ 10}** Chambers appealed, raising the following assignment of error:

> The trial court erred in granting Defendant-Appellee's Motion for Summary Judgment because Plaintiff-Appellant's interpretation of the insurance contract — that Defendant is required to include sales tax in its loss payment for totaled vehicles — is, at minimum, reasonable, and the undisputed record evidence establishes Defendant failed to pay sales tax owed as a matter of law.

## II.  Law and Analysis

**{¶ 11}** As an initial matter, we reject Chambers's argument that the trial court was bound by the initial finding of arguable ambiguity in its ruling on Farmers' motion to dismiss.  The trial court was not required, by virtue of its journal entry denying Farmers' motion to dismiss, to find the Policy ambiguous in its ruling on the Company's summary-judgment motion.  "'An order denying a motion to dismiss is generally not a final, appealable order.'" *Berdysz v. Boyas Excavating, Inc.*, 2019-Ohio-1639, ¶ 9 (8th Dist.), quoting *Windsor Realty & Mgt., Inc. v. Northeast Ohio Regional Sewer Dist.*, 2016-Ohio-4865, ¶ 14 (8th Dist.).  *See E.B.P., Inc. v. 623 W.*

*St. Clair Ave., LLC*, 2010-Ohio-4005, ¶ 44 (8th Dist.), citing *Black's Law Dictionary* (9th Ed. 2009) (defining "interlocutory order" as "any order other than a final order"). "An interlocutory order remains subject to revision while the case remains pending." *133 Garvin Ave. v. Realtywise Inc.*, 2025-Ohio-4382, ¶ 23 (8th Dist.). *Accord State v. Colon*, 2016-Ohio-707, ¶ 10 (8th Dist.), quoting *Marc Glassman, Inc. v. Fagan*, 2006-Ohio-5577, ¶ 11 (8th Dist.) ("'An interlocutory order is subject to revision by the trial court at any time prior to the entering of a final judgment in the case.'").

{¶ 12} Civ.R. 56 sets forth the standard by which courts evaluate a motion for summary judgment. "Under Civ.R. 56, summary judgment is appropriate when no genuine issue exists as to any material fact and, viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion that is adverse to the nonmoving party, entitling the moving party to judgment as a matter of law." *Madaras v. Applebee's Neighborhood Grill & Bar*, 2025-Ohio-169, ¶ 12 (8th Dist.), citing *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).

{¶ 13} "'We review an appeal from summary judgment de novo.'" *Anderson v. Mitchell*, 2014-Ohio-1058, ¶ 4 (8th Dist.), quoting *Grafton* at 105. "'De novo review encompasses an independent examination of the record and law without deference to the underlying decision.'" *Torres v. Concrete Designs, Inc.*, 2019-Ohio-1342, ¶ 48 (8th Dist.), quoting *Gateway Consultants Group, Inc. v. Premier Physicians Ctrs., Inc.*, 2017-Ohio-1443, ¶ 22 (8th Dist.).

{¶ 14} Here, to review the court's grant of summary judgment, we must determine the meaning of the Policy. In so doing, we seek primarily to give effect to the intent of the parties, which is presumed to be reflected in the Policy's language. *Beverage Holdings, L.L.C. v. 5701 Lombardo, L.L.C.*, 2019-Ohio-4716, ¶ 13. We give common words in a contract "'their ordinary meaning unless manifest absurdity results or unless some other meaning is clear from the face or overall contents of the agreement.'" *Id.*, quoting *Cincinnati Ins. Co. v. Anders*, 2003-Ohio-3048, ¶ 34. If contract language "is plain and unambiguous," it will be enforced as written. *Id.* "'Ambiguity exists only when a provision . . . is susceptible [to] more than one reasonable interpretation.'" *Williams-Diggins v. Permanent Gen. Assur. Corp.*, 2020-Ohio-3973, ¶ 31 (8th Dist.), quoting *Lager v. Miller Gonzalez*, 2008-Ohio-4838, ¶ 16.

{¶ 15} Again, the Policy establishes that, in relation to total-loss cash settlements, "If [Farmers] pay[s] for loss in money, our payment will include, where required by law, the applicable sales tax and fees for the damaged or stolen property." The question before this court is whether we can reasonably interpret the Policy to require Chambers's total-loss cash settlement to include an amount for sales tax. We cannot.

{¶ 16} Chambers does not argue that he was entitled under the O.A.C Provision to a settlement that included a sales-tax payment. That is, he does not argue that he substantiated purchase of a replacement vehicle, much less that he did so within the 30-day timeframe set forth in the O.A.C. Provision. Instead, Chambers

argues that the "applicable" sales tax under the Policy is the sales tax that Ohio imposed upon him when he purchased the insured vehicle, which later became "damaged."

{¶ 17} Chambers identifies no Ohio law requiring an insurer to include a sales-tax amount in a total-loss cash settlement that is paid to an insured who, as here, did not substantiate that he or she had purchased a replacement vehicle. Although the parties cite numerous cases to support their arguments, we are aware of no Ohio case that interprets the exact language at issue here. We acknowledge that, where plaintiffs sought sales-tax payments from a different insurer, under different policy terms, the U.S. District Court for the Northern District of Ohio did not find "that the phrase 'applicable sales tax for the damaged or stolen property' is related to replacement costs." *Romaniak v. Esurance Prop. & Cas. Ins. Co.*, 2021 U.S. Dist. LEXIS 173787, 18-19 (N.D.Ohio Sept. 14, 2021). However, unlike the Policy, the contract at issue in that case did not establish that the insurer's obligation to pay sales tax arose "where required by law." Also notable is that the *Romaniak* Court issued its findings concerning "applicable sales tax" in an interlocutory order and the case settled without being resolved on the merits. *See Romaniak v. Esurance Prop. & Cas. Ins. Co*, 2022 U.S. Dist LEXIS 166350 (N.D.Ohio Sept. 12, 2022).

{¶ 18} Courts in other jurisdictions have addressed contractual provisions that mirror or are similar to the language disputed in this case. For example, in *Reeves v. 21st Century Centennial Ins. Co.*, 2022 U.S. Dist. LEXIS 109431, *7

(E.D.Mo. June 21, 2022), the U.S. District Court for the Eastern District of Missouri analyzed language almost identical to the Policy at issue here, requiring an insurer to make payments for sales tax "where required by law." In *Reeves*, the plaintiff argued that the policy required insurers to account for sales tax in any state that imposed sales tax at the time of purchase of a vehicle. The insurer countered that its obligation to pay for sales tax under the policy was only triggered by a separate legal requirement for an insurer to pay for sales tax in resolving a total-loss vehicle claim. *Id.* at \*6. The *Reeves* Court concluded that "[t]he most natural meaning of the language 'our payment will include, where required by law, the applicable sales tax' is that the payment will only include applicable sales tax when a law requires *insurers* to include sales tax." (Emphasis added.) *Id.*

{¶ 19} We acknowledge that, as Chambers argues, Ohio imposes sales tax on certain vehicle purchases in certain circumstances. However, those purchases occur before the insured car becomes "damaged or stolen" under the Policy. Moreover, the legal requirement to pay sales tax at the time of purchase does not relate specifically to the circumstances under which an insurer is required to include a sales tax amount in a settlement, if it pays a claim. The O.A.C. Provision, however, does precisely that. The O.A.C. Provision, in part, states, if following "the total loss of an automobile, the claimant purchases a replacement automobile, the insurer shall reimburse the claimant for the applicable sales tax incurred on account of the claimant's purchase of the automobile . . . ." The parties do not dispute that, under

the O.A.C. Provision, the sales tax that an insurer may owe is based on the purchase of a vehicle that replaced a damaged or stolen insured vehicle.

{¶ 20} In light of the foregoing, like the court in *Reeves*, we find that sales taxes associated with a car's original purchase are not "the applicable sales tax" that the Policy requires Farmers to account for in a total-loss cash settlement. We further find that the only reasonable reading of the provision at issue here is that, regarding the cash settlement of a total-loss claim, Farmers is obligated to pay an insured the sales-tax amount that the law sets forth, under the circumstances in which the law mandates that the Company do so. Here, that mandate is found in the O.A.C. Provision.

{¶ 21} Chambers has not substantiated purchase of a replacement vehicle as provided under the O.A.C. Provision. Consequently, the amount of sales tax Farmers is obligated to pay is zero.

{¶ 22} Because we find that the Policy unambiguously does not obligate Farmers to include sales tax in Chambers's total-loss cash payment, we overrule Chambers's sole assignment of error.

{¶ 23} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
DEENA R. CALABRESE, J., CONCUR